### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### AT PADUCAH

**GAROLD HUNT**
**O/B/O HAROLD HUNT**
    Plaintiff

v.                                                                                                         No. 5:94CV-00148-J

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

### MAGISTRATE JUDGE'S REPORT
### and RECOMMENDATION

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Dennis Fentress. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 20 and 24, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on July 12, 2006, by administrative law judge (ALJ) James Craig. In support of his decision denying Title II and Title XVI benefits, Judge Craig entered the following numbered findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through 9/31/91.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's low back pain, diabetes, organic mental disorder, dysthymic disorder, somatoform disorder, and substance addiction disorder are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

    4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

    5. Between March 16, 1987, and November 24, 2001, the claimant has the following residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. He must be able to alternate sitting and standing as comfort dictates. He can stand and walk on a normal surface without accommodation for up to two hours during an eight-hour workday. He should not be exposed to the weather, extreme heat, extreme cold, wetness or humidity. He should avoid moving, mechanical machinery, electric shock, and unprotected heights. He cannot work on vibrating surfaces or with vibrating objects. The individual could not perform detailed or complex tasks. He had a fifth to seventh grade literacy level. He could not perform quota work.

    6. During the period at issue, the claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

    7. The claimant was an "individual of advanced age" at the time of the prior decision. (20 CFR §§ 404.1563 and 416.963). During the period in question, the claimant was a "younger individual" or "an individual closely approaching advanced age."

    8. The claimant has "more than a high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

    9. The claimant has no transferable skills from semi-skilled work previously performed (20 CFR §§ 404.1568 and 416.968).

    10. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

    11. Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rules 202.20 and 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that he could have performed during the period between March 16, 1987, and November 24, 2001. Examples of such jobs include work as an information clerk, charge account clerk, and a press operator.

    12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 51-52).

## Governing Legal Standards

    1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or

2

reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a

conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with <u>all</u> the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**Procedural history**

This case has an extensive procedural history, the administrative record being nearly 1,500 pages long. On March 16, 1987, ALJ Howard Goren found the plaintiff to be "not disabled" (AR, p. 71). The decision became the Commissioner's final decision when the Appeals Council affirmed and the plaintiff did not seek judicial review (AR, p. 71). Thereafter, the plaintiff filed new applications for benefits.

On March 18, 2002, ALJ Robert Haynes found the plaintiff to be "disabled" as of November 24, 2001, pursuant to a direct application of Rule 202.06 of Appendix 2 of the regulations, the so-called medical-vocational guidelines, or grids (AR, p. 1246). Judge Haynes found the plaintiff to be "not disabled" during the closed period between March 16, 1987, and November 24, 2001. Judge Haynes' decision did not become the Commissioner's final decision because the Appeals Council remanded for further administrative proceedings (AR, pp. 1282-1284). The Appeals Council implicitly affirmed Judge Haynes' evaluation of the plaintiff's physical limitations but remanded for further exploration of his mental restrictions.

On December 8, 2003, upon remand, ALJ James Craig conducted an administrative hearing. On November 23, 2004, ALJ James Craig found the plaintiff to be "not disabled" during the closed period (AR, p. 87). Judge Craig's decision also did not become final because the Appeals Council again remanded for further proceedings consisting of interrogatories to a mental health expert and a vocational expert (VE) (AR, pp. 1365-1366). No hearing was held in connection with the remand.

On July 12, 2006, Judge Craig rendered the final decision herein finding, for the third and final time, that the plaintiff was "not disabled" during the closed period between March 16, 1987, and November 24, 2001.

## Vocational evidence

On October 26, 2005, the VE, Lowell Latto, Ed.D., provided the following answers to interrogatories, which were in the form of hypothetical questions from the ALJ (AR, pp. 1378-1379):

> **ALJ's first hypothetical:** Assuming the above vocational factors, an individual can lift and carry 20 pounds occasionally and 10 pounds frequently. He must be able to alternate sitting and standing as comfort dictates. He can stand and walk on a normal surface without accommodation for up to two hours during an eight-hour workday. He should not be exposed to the weather, extreme heat, extreme cold, wetness or humidity. He should avoid moving, mechanical machinery, electric shock, and unprotected heights. He cannot work on vibrating surfaces or with vibrating objects.
> **VE's response:** He would not be able to do the past work ... Other work would exist that would allow the worker to get up and down as long as they could stay at the work station for an eight hour work day. Examples would include unskilled sedentary jobs such as charge account clerk, DOT # 205.367-014 ... information clerks, DOT # 237.367-022 ... An additional category would be press operator DOT # 363.685-010 as described below. ...
>
> **Second hypothetical:** Same assumptions as Hypo #1, except the individual can lift and carry up to 10 pounds occasionally.
> **VE:** Same response as Hypo #1.
>
> **Third hypothetical:** Same assumptions as Hypo #1, with these added limitations. The individual may not perform detailed or complex work tasks. He has a fifth to seventh grade literacy level. He cannot perform quota work.
> **VE:** Same response as Hypo #1.
>
> **Fourth hypothetical:** Same assumptions as Hypo #2, with these added limitations. The individual may not perform detailed or complex work tasks. He has a fifth to seventh grade literacy level. He cannot perform quota work.
> **VE:** Same response as Hypo #1.

7

**Discussion**

The magistrate judge concludes that Judge Craig was not bound by his prior findings nor was he bound by those of Judge Haynes because those decisions never became final decisions of the Commissioner. The sole issue before this court is whether Judge Craig's latest decision (i.e., the final decision of the Commissioner herein) is supported by substantial evidence in the administrative record.

Judge Craig found that the plaintiff was not disabled during the closed period between March 16, 1987, and November 24, 2001, in reliance upon the above vocational hypotheticals. Judicial review of final decisions of the Commissioner is deferential and contemplates a "harmless error" review. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir., 2005). It is well settled that a VE's testimony in response to hypothetical questions may constitute substantial evidence in support of a denial decision. See *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987). Hence, for purposes of a deferential review, the most pertinent hypothetical is typically the one that contemplates the greatest number of physical and mental restrictions to which the VE was able to identify an ability to perform other jobs in the national economy.

Judge Craig's residual functional capacity (RFC) No. 5 reflects acceptance of the third hypothetical. However, from a "harmless error" perspective, the pertinent hypothetical arguably is the fourth one. Hence, the court should affirm the ALJ's decision unless the plaintiff points the court to evidence in the administrative record of a vocationally-significant limitation, which the ALJ was required to accept, in excess of those contemplated by the third and/or fourth hypothetical.

To show that his impairments resulted in a vocationally-significant restriction, the plaintiff must identify a specific limitation assigned by a medical expert. It is insufficient to point to raw diagnoses and medical data because lay persons, including the plaintiff, counsel, and this court, are "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Commissioner*, 172 F.3d 31, 35 (1st Cir., 1999). "[L]ay intuitions about medical phenomena are often wrong." *Schmidt v. Commissioner*, 914 F.2d 117, 118-119 (7th Cir., 1990). The mere diagnosis of a condition "says nothing about the severity of the condition." *Higgs. v. Commissioner*, 880 F.2d 860, 863 (6th Cir., 1988). The severity of a medical impairment must be measured in terms of its effect upon the ability to perform basic work activities and not in terms of a deviation from medical standards of bodily perfection or normality. The magistrate judge concludes that the plaintiff has failed to point the court to probative evidence in the administrative record of a vocationally-significant physical or mental limitation in excess of those contemplated by the vocational testimony as a whole. Accordingly, we shall recommend an affirmance of the Commissioner's final decision. The plaintiff's specific contentions shall be considered in turn.

First, the plaintiff argues that "the repeated remands on Mr. Hunt's application for benefits have become unconscionable thus warranting a finding of eligibility for benefits" (Docket Entry No. 20, p. 14). The plaintiff has cited no controlling Sixth Circuit precedent for the proposition that administrative delay authorizes this court to award disability benefits in a case, such as the present one, in which the Commissioner's final denial decision is supported by substantial evidence. The undersigned is unaware of any such authority. Furthermore, it seems that the proper method of litigating a claim for benefits based upon "unconscionable" administrative delay would have been for the plaintiff to file a complaint at the administrative level and/or before this court at

9

that point in time in which the plaintiff believed the delay became unconscionable, which in this case, presumably was long before Judge Craig issued the Commissioner's final decision herein on July 12, 2006. In other words, the plaintiff appears to have lost the equitable high ground for an award of benefits based upon administrative delay by virtue of his own delay in raising the issue.

Second, the plaintiff argues that "the evidence was based on inadequate vocational evidence and there does not [appear to be] a significant number of jobs that Mr. Hunt could perform" (Docket Entry No. 20, p. 17). As noted above in our summary of the vocational evidence, four hypotheticals were presented to the VE by way of interrogatory. In response to each hypothetical, the VE identified the jobs of charge account clerk (job no. 1), information clerk (job no. 2), and press operator (job no. 3). The plaintiff argues that counsel's subsequent cross-examination of the VE by way of interrogatory invalidated and rendered insubstantial the ALJ's reliance upon job nos. 1 and 2, to-wit (AR, p. 1374):

> **Counsel's fifth hypothetical:** Assume the same limitations as reported in Hypo #1, add additional restrictions as follows: would be restricted to simple, routine or repetitive work tasks; would be restricted to jobs that would result in only limited contact with the general public; would be limited to jobs that are performed in only low stress work environments.
>
> **VE:** Could do job #3 in Hypo #1.

The foregoing additional mental limitations propounded by counsel were previously adopted by Judge Craig in his penultimate decision on November 23, 2004. The plaintiff then argues that counsel's cross-examination of the VE at the hearing in connection with the penultimate decision invalidated the ALJ's reliance upon even job no. 3.

The magistrate judge concludes that the argument is unpersuasive because the ALJ was not bound by the findings in his penultimate decision because that decision never became the

10

Commissioner's final decision. To the extent Judge Craig's ultimate, or final, decision may have attempted to reconcile his findings from his November 23, 2004, decision, from the perspective of "harmless error" judicial review, the attempt was gratuitous.

Third, the plaintiff argues that "Grid Rules 201.09 and 201.10 would require a finding of eligibility for benefits on Mr. Hunt's attainment of age 50 in December of 1996" (Docket Entry No. 20, p. 21). The magistrate judge concludes that the argument is unpersuasive because the foregoing grid rules contemplate a maximum exertional capacity for "sedentary" work, whereas Judge Craig found that the plaintiff has a capacity for "light" work. See ALJ Finding Nos. 5 and 11.

Fourth, the plaintiff argues that "the administrative decision failed to evaluate all medical opinions of record [pertaining to his mental impairments]" (Docket Entry No. 20, p. 23). Several of the medical opinions in question refer to the plaintiff's "poor" abilities in various functional areas. In his answers to interrogatories by counsel, the VE stated that "the definition of 'poor' in the document is too vague for me to evaluate" (AR, p. 1374). The magistrate judge concludes that, in a fifth-step denial decision, the Commissioner is not obliged to evaluate medical opinions that, from a vocational perspective, are impermissibly vague. Next, the plaintiff attempts to rely upon raw global assessment of functioning (GAF) scores that appear in the administrative record. The Sixth Circuit has held that GAF scores are deemed to be subjective and have little bearing on the individual's ability to function in an occupational context. ALJ's need not put "stock" in them. See *DeBoard v. Commissioner*, 2006 WL 3690637 and *Kornecky v. Commissioner*, 2006 WL 305648. Finally, the plaintiff attempts to rely upon the opinion of the Veterans Administration (VA) that he is one-hundred percent occupationally disabled. The magistrate judge concludes that this vocational conclusion was not binding upon the Commissioner.

Fifth, the plaintiff argues that "the administrative law judge failed to properly evaluate all medical opinions of record concerning Mr. Hunt's physical impairments" (Docket Entry No. 20, p. 29). The plaintiff relies primarily upon the opinions of Drs. Robert Barnett and Dennis Beck. The magistrate judge concludes as follows:

1. Judge Haynes' decision adequately explained the weight given to the opinions of Drs. Barnett and Beck (AR, pp. 1241-1242).

2. In remanding only for further evaluation of his mental restrictions, the Appeals Council implicitly affirmed Judge Haynes' evaluation of the plaintiff's physical limitations, and Judge Craig so observed (AR, pp. 77 and 1282-1284).

3. Under the circumstances and given the extremely lengthy proceedings in this case, Judge Craig was not obliged to re-articulate the Commissioner's prior evaluation of the plaintiff's physical limitations in light of the opinions of Drs. Barnett and Beck.

4. To the extent the opinion of any medical source required, on its face, a conclusion of disability; such opinion was not a medical opinion but rather an "opinion on issues reserved to the Commissioner" as contemplated by 20 C.F.R. §§ 404.1527(e) and 416.927(e). Such opinions are entitled to no "special significance." Id.

The plaintiff's sixth and final contention is that the Commissioner failed to consider the "determination of disability by other government agencies [i.e., the VA's finding of 100% disability]" (Docket Entry No. 20, p. 33). The magistrate judge concludes that Judge Craig adequately analyzed this evidence in his penultimate decision on November 23, 2004 (AR, p. 80).

12

**RECOMMENDATION**

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).